The next case is United States v. Santiago. Hi. Good morning, Madam Chief, and may it please the Court. My name is Daniel Nutter. I represent the defendant appellant, Ms. Omayra Santiago. In United States v. Green, this of that statute is subject to a five-year statute of limitations. Now, although the Green precedent was brought to the district court's attention shortly prior to Ms. Santiago's sentencing, the district court indicated it had not read Green and proceeded to impose a restitution sentence for losses going back to January 2005. Right, but it was a restitution to which she had agreed. Well, if, hypothetically, and I know this is not what you intend or the fact, hypothetically, if she, in full knowledge of her options, agreed to pay that restitution as part of a plea agreement, that would, the court would be entitled to rely on that, wouldn't it? Yes and no, Judge Lynch. First of all, it would have to be an agreement supported by consideration, which this was not an agreement supported by consideration. But those are the issues, right? One question is whether this is a valid plea agreement in that respect, and a second would be whether it's invalid because of ineffective assistance of counsel, right? Those are the two, I think those are the two principal things we're talking about here. Yes, but again, the plea agreement needs to be read as a whole. In determining whether she agreed to this or not, you need, you can't just take one sentence out of context. Respectfully, I think you need to construe the entire agreement. And in light of Green... Counsel? Yes. Are you asking us to throw out the whole agreement so that you would go back and the court could give a different sentence with respect to possible jail or just the monetary restitution? We're only addressing the asking for... Yeah, but that's my question. Can you do that? Well, I think... That is, if you're saying that this was improper and that there wasn't an understanding because after all, this isn't a case of a law changing after but of a law being different before so it doesn't go with the cases where we say... But can she say, I want only this because this is wrong? Now, this doesn't mean that counsel shouldn't have argued. That's a different issue. But on the merits of whether this was not an adequate agreement, is she asking for the whole thing or just one? I think the restitution question is severable, Your Honor, because as the district court itself noted in this case, the restitution played no role in her consideration of what sentence to give. She says this on page 98 of the appendix where Judge Hall says, this isn't a case where someone agrees to pay more restitution and hence they get a lower sentence. Since Ms. Santiago is making $538 a month, that's not going to pay this restitution. Is there any authority for that proposition? I mean, setting aside the ineffective assistance claim, if the claim is that her plea was not knowing and voluntary, we don't usually pick and choose with regard to what. We just say, well, you're arguing for your plea back. But what we're saying is that there was not a waiver of this right, that the government needed to bargain for a waiver of this right post-green. And the government clearly bargains for a number of other. They enumerate every right that they want Ms. Santiago to waive over three pages of the plea agreement and then add an integration clause that says nothing else is waived. So I'm suggesting before, I'm not even saying we need to necessarily get to throwing out the plea agreement. That's somewhat of a backup argument. I'm saying that in construing what she agreed to in the first place. But she agreed to the specific restitution amount. Why would she need to make a separate waiver to say, I know that I have a right not to do that, but I'm waiving that right. She agreed to the restitution amount. That was part of the bargain. But that restitution amount was based on the mistaken understanding that this is what she was required to pay. Well, maybe. But that would be a question about what she was informed of and whether she was fully informed before she entered this agreement. That's a factual question. And if the facts are and could be proved to be, and I think we could do this now. I don't think we have to wait for 2255. We're still in a live case. We could send it back for Because the plea agreement was negotiated in a state of ignorance, not in a state of knowledge. And when you say there was no consideration, couldn't the government have charged her with mail fraud, for example? Isn't there always some consideration in a plea just from the fact that you're getting the benefit of going before the court, throwing yourself on the mercy of the court, expressing remorse, not having all of the facts and their gory details laid out at a trial, right? I mean, there are benefits to pleading guilty. But Jacobson makes it clear that the comparison you make is pleading guilty without an agreement versus pleading guilty with an agreement. Ms. Santiago could still plead guilty. But wait, but this is not a case where the government filed an indictment and charged this one thing, right? And then there's a plea to the indictment. This is a case where the entire charging instrument is negotiated, isn't it? It's all one act to be judged against the status quo ante, which is the government has a lot of options as to what to charge and what to do. Judge Lynch, the Sentencing Commission directly speaks to this issue. It actually, in Chapter 1, the part that no one ever reads of the sentencing manual, but I would direct the court to Chapter 1, Part A, Section 4A, where the Sentencing Commission explains that one of the things it's specifically trying to do is to eliminate the ability of the government to simply add multiplicitous versions of the same charge. It says the commission, I'm quoting, I'm reading from the guideline here, the commission has written its rules for the treatment of multi-count convictions with an eye toward eliminating all... That might mean that if we throw out, that if a whole thing is thrown out, the government cannot do something which would make it undesirable, but it doesn't tell us whether we can throw out only part. But the point is that the guidelines have set it up so that the government gets no benefit whatsoever to charging that way. I have another question, and that is, on restitution, there are two clauses, two statutes. A more it must be a certain amount, and an agreement cannot take away from that amount. Now, that's never been argued, and this is a property thing. Is this agreement a valid agreement at all, given that section? Now, we have usually used it the other way. We have usually used it to say that an agreement that is less than that amount doesn't stand, but the language of the statute doesn't speak to that, and I haven't seen really any argument, but I know the district courts are every which way on this, and I don't know quite what's going on here. Well, I would suggest, and I suppose I apologize for not being prepared to properly address that. My understanding, at least from Green, is that as long as there is consent in a plea agreement, which again implies that it's a valid plea agreement based on both parties actually giving up a tangible benefit, then you could agree to more than what the statutory limit is. But without such an agreement, and again, presumably it's a knowing involuntary waiver, then you can't do that. So that's what I would say, and I've reserved a couple of minutes as well. Thank you, Your Honors. Good morning. May it please the court. My name is Margaret Donovan, and I represent the government in this case. We submit that the district court's judgment should be affirmed here. Talk right into the microphone. I'm sorry, you've got it a little... I apologize, Your Honor. We submit that the district court's judgment should be affirmed. In support of this contention, I'd like to highlight three points from our briefing quickly. The first is that the district court acted well within its discretion, and it relied on clear statutory authority when it entered a judgment and the amount of restitution agreed upon by the parties. The second point I'd like to highlight is that there was no Rule 11 error here. And third, the record belies the defendant's claim that there was an ineffectiveness assistance of counsel. Could you address that last point first? Because we really... I mean, I'm having difficulty seeing how we know whether counsel alerted the defendant to the fact that restitution could be... an argument could be made that it should be capped by the statute of limitations. Sure. And of course, we don't know exactly what was spoken in between defense counsel and his client. But we do know that the defense counsel made a strategic argument at sentencing attempting to leverage Ms. Santiago's willingness... We don't know if it was a strategic argument or if it was a mistake. You had Judge Hall, who is a very good judge. Yes, Your Honor. And it might well be that the counsel made a strategic argument, but it may well be that the counsel simply missed the fact of saying to his client, look, if you pull out with this judge, you're likely to get the same thing or something very similar on the sentencing other part. But the judge will do something else on restitution. And we just don't know. That's why normally we do it in a 2255. Here we can't because of the facts of habeas. But shouldn't we try to find out more? Sure, Your Honor. So I would note that even if we assume that the lower... that the defense counsel for Ms. Santiago never advised her of Greene, there are two points to raise on that. First, that would have constitute essentially a withdrawal from the plea agreement because if he would have been challenging the entire amount of restitution, he would have never entered the plea agreement. And the second is that we would... We don't know. This is our problem. Here at the last minute, the government itself at the last minute discovers this case. The court has had an agreement. The court says it's an agreement. It's a good one. We don't know if counsel has said to her or ought to have said to her under the circumstances, this is... we can do better. And at that point, I mean... But Ms. Donovan, aren't you really saying that even if we remand for fact-finding, in order to establish a claim of ineffective assistance of counsel, Ms. Santiago would have to swear to two things. One, I was never told that I had a right if I didn't plead guilty to limit the restitution to a particular time period. And two, I would not have entered the plea that I entered if I was told that. That's exactly right, Your Honor. We don't think that there would be prejudice shown. Even if we could show that there was deficient performance, there wouldn't be prejudice because of what Your Honor just outlined. Well, we don't know that because the procedural posture is such that that has never been alleged. But if we were to remand and allow an opportunity to do that, that, it seems to me, is what Ms. Santiago would have to do in order to establish ineffective assistance, and that would lead to the undoing of the entire agreement, including the government's foregoing whatever other charges might be out there. We don't know what they might be. That's correct, Your Honor. I agree with that. And the reason why I'm stating here that we think that we can determine that there's no prejudice is because Ms. Santiago specifically says in her appellate briefings that she is not seeking to vacate the conviction. So that implies that she is not, this would not have changed her mind. She wanted to, she wants to keep the benefit of the agreement. She just doesn't want to pay her end of it. Well, if that happens, then if we did remand, that would be the end of the case. But whether, when she is informed about this, she says, this is what I would do. It's easy enough for her to say, if she thinks I can get one and not the other, to say I just want one. But has she been faced with a possibility of all or nothing? We don't really know. Well, Your Honor, I will note that the defense counsel was given an opportunity to review Green, and he declined to comment on it. And that's one of the problems. We're focusing on counsel's adequacy. Sure. Ms. Donovan, when you say he made a strategic argument, I take it you are not suggesting, because we can't read the man's mind, that, well, I don't even know who the counsel was. We can't read the lawyer's mind. What you're saying is counsel specifically argued, specifically attempted, whatever counsel knew or didn't know about the law, whether counsel had read a case or not read a case, counsel was specifically arguing for a no-imprisonment sentence on the ground that the defendant had agreed to pay a high restitution amount. That's correct, Your Honor. Part of his sentencing arguments included a reference that Ms. Santiago had agreed to take responsibility for, quote, more than she should have. Ms. Santiago herself addressed the court, saying that she would not rest until she paid restitution. There were also references by Santiago's counsel to her willingness to obtain a home equity loan on her home. So paying restitution and getting a lesser prison sentence was, appeared to be the core of defense's argument there. Yes, but is that consistent with full restitution or restitution as required by law? Your Honor, I would submit it's consistent with full restitution. It certainly can be your way. I don't have any doubt that it can be your way. What I want to know is, is it also consistent with a person saying, I'm terribly sorry, whatever the law requires me to give for restitution, I'm happy to give? But that's not what she said here, Your Honor, and that- It's just that she didn't know there was a difference. She didn't, you know, it's all very well to say I'm willing to pay full restitution, thinking that full restitution under the law is X amount, when full restitution is Y amount. And I don't know whether if she knew the difference, she would have made a difference. I just don't know. Well, Your Honor, we believe that that issue was actually surfaced in Green, where the defendant had agreed to pay the amount that she was legally liable to pay under the statute of limitations. Here, we don't have that same language in the agreement. We have an exact number that was agreed upon and negotiated by the government and defense counsel, and that's the number that the defendant agreed to pay. And she was allowed to agree to that, and the district judge Hall was allowed to enforce that under Title 18 United States Code Section 3663A. There's clear statutory authority that if the parties agree to an amount outside of the statute of limitations, if it's in the plea agreement and it's a specific amount, the district court can enforce that as part of the judgment. And the district court can and did rely on that. Can you inform me about the question I asked the opposing counsel, which he understandably didn't know about because nobody has argued it, about whether the section that requires, when it is property damage, a restitution of a set amount and does not allow an agreement different, applies in a case like this or applies only to an agreement which would give less than that? You know, candidly, Your Honor, I also did not research that exact issue beforehand, but I would note that it's not an infrequent occurrence that parties agree to restitution outside of the specific offense of conviction. So to the government's point, that's exactly what happened here. And just, again, if Ms. Santiago had been charged with and pled to a single count of mail fraud, that would be a continuing offense, would it not? That's correct, Your Honor. That scheme would extend back to the beginning. That's correct, Your Honor. Mail or wire fraud. There is a very lengthy stipulation of offense and relevant conduct attached to the plea agreement, and within that itself it outlined several bases that the government could have charged, and we submit that that was part of the consideration for the plea agreement. But to Your Honor's point, yes, that would be a continuing offense, mail or wire fraud. By the way, is there any reason on earth to believe that Ms. Santiago will ever be able to pay the amount of restitution that we're fighting about here? Your Honor, I understand that this isn't always an instance where the government gets paid full restitution, but in this case Ms. Santiago did say on the record that she was seeking to obtain a home equity loan and that she was attempting to refinance her home, so we believe that significant efforts would have been made in this case, yes. Thank you. If there are no further questions, Your Honor, I'll rest on my briefing. Thank you. Thank you again, Your Honors. Just to respond to a couple of brief points. Just to answer first that last question of yours, Judge Lynch, Judge Hall actually lowered the amount that Ms. Santiago was paying to $50 a month because she couldn't even pay the $300 a month. That was in a February order in this case. So there's absolutely no chance whatsoever. The actual amount in controversy is probably about $30,000 payable over 20 years in terms of whether the government wins or- Counsel, are you arguing a sensible thing? That is, if ultimately you have to go back down and say this has to be thrown out because she would have not agreed to this deal had she known that, aren't you putting your client in a worse situation? No, Your Honor, because- That's not for me to say. You know, what happens below if they bring mail fraud, that's not for me to say, but it is something you should worry about. Well, I think, Your Honor, there's been some confusion about what my client's position is because my client does not need the government's permission to plead guilty. My client would have pleaded guilty to 641 because she is guilty. But there was a waiver of indictment here. This is not a case where the government brings a charge and she has every right to plead guilty or not plead guilty. This is an integrated agreement that you will charge me only with this and I will plead to that, and that's what is- it's all October the 3rd. The date on the plea agreement, the date of the waiver of indictment, it's all an integrated act. There was nothing for her to plead guilty to until this arrangement was agreed to. But the second part of what I'm saying is that I'm not sure my client could plead guilty to any of these other things that the government is suggesting that they might otherwise want to- That may be so, but are you in a position to represent to us that if we remand to the district court, your client will say to the court under oath that I was never informed of this Green case or the limitation on restitution with respect to a section 641 plea, and I would not have entered this agreement if I had known that? I think this partly goes to the ineffective assistance, but in terms of what she- As to that issue. As to what information she got. But I think it's clear that under this agreement- I don't think you need to answer that. I mean, if we send it back under those terms, then that will be decided. I mean, your client isn't here. What we're saying is that if we do send it back under those terms, you must watch out because you may not be doing her a favor. Or she may decide she will not say that, and then the entire remand will have been futile. But she needs to at least be instructed on it and get that effective assistance. I don't want to criticize you here or raise some other question, but this comes up with some frequency in this court that appellate lawyers find some potential error and make an argument, and then they come to us and say, well, I've never told my client that this is what the consequence of this might be, and I've never asked my client what her position would be if X, Y, and Z happens, and we are being asked to engage in what may be a futile exercise, send something back to the district court for something that could only give relief if X, Y, and Z occurs, that is entirely within the defendant's power one way or the other, and we have no way of knowing whether the defendant is actually going to take that position. It seems to me, and this is sort of a going forward thing that I think defense counsel in general in these appeals should think about, as to when you're attacking a guilty plea or arguing that predecessor counsel was ineffective, there are all kinds of considerations that could make that not necessarily something that the client really wants to do and is really in the client's interest, and that should be canvassed with the client before we wind up in this position here. I think that is an obligation of counsel to figure out whether the thing that you're arguing for is something that in the real world is something that the client actually wants. Respectfully, Your Honor, I have had considerable conversations with my client on this very issue, and in part it's because we disagree with many of the characterizations by the government in this case about what my client is liable for or not. Very enough. I realize I'm over my time, but I just did want to make clear, if I may, because you had raised this question and I hadn't had a chance to respond when you asked the government about being able to just charge wire fraud, for example, with a scheme which would avoid this whole issue. The thing that differentiates wire fraud from theft is precisely that there is this scheme, this continuing offense in which the government would have to actually show that not only were there individual instances that happened between 2005 and the present, but that sometime in 2005 my client came up with a plan, a scheme or artifice, which in fact continued for a period of 15 years when the actual scheme, so-called scheme, is her being the victim of a horrific traffic accident. And that's fair enough, too. It may be that the government would not be in a position to prove that. There are not facts to prove a scheme in this case. There are facts to prove theft, and that is why my client pleaded guilty to theft and would plead guilty to theft even without a plea agreement. If the government comes back and charges these other things with which my client has never actually been charged, then she would have to be counseled on the offenses. So that is all something that we would find out more about if we had a remand and we had counsel come in and discuss in a hearing or in an affidavit what was considered before this plea was entered. Thank you. Thank you, Your Honor. Thank you both. We'll take the matter under advisement. The next case is Trenchana v. McGrath. Thank you, Your Honor. May it please the Court, James P. Blank on behalf of Defendant Justin McGrath. This appeal arises from a 1983 trial that resulted in a verdict for the plaintiff. In the underlying allegation made by a prisoner at Bear Hill Correctional Facility, he alleged that evidence had been planted on him by the defendant, resulting in an unjustified use of force by the defendant and subsequent attacks by other corrections officers at Bear Hill Correctional Facility. Mr. McGrath contended, in contrast, that Mr. Trenchana was the subject of a random path risk at which time Mr. McGrath discovered a plexiglass shank in the sock of Plaintiff Trenchana. There was only two witnesses to this relevant interaction until backup was called, at which point there was nothing to be sussed out between whether the plexiglass was planted there or whether it actually had arisen from Mr. Trenchana's sock. In this appeal, we contend we make four arguments. First, we think that given the series of different defendants involved in this action and the jury's verdict relieving co-defendant Barnaby of any liability and the plaintiff's failure to name the subsequent plaintiffs, whether it's John Doe or specifically his identified plaintiffs, who supposedly tossed him around and threw him into the back of a van, kicked him in the face, that combined with the relatively minor injuries that were sussed out at that time. You conceded that the rib injury was due to your client. You argued that there wasn't undue force because of the shank and so on, but that that injury was due to your client's behavior is conceded on the record, is it not? It is not, Your Honor. You say that he was sent against the wall and that's what broke his hip. Right. There's no definitive evidence or expert testimony that established, for example— You don't need expert testimony for that. Standard tort, you know, I injured him. Quite apart from the fact of whether in this circuit, after Friendly's opinion in Moldavia, if there's a joint group of people and you can't tell who it was, they're all liable, but leave it as so. Fair enough, Your Honor. Moving on, excessiveness. We contend that the $190,000 award for injuries that didn't require any treatment is excessive and warrants a— Broken ribs don't generally get treatment, right? I mean, there's nothing much you can do for a broken rib except have somebody immobilize himself and wait for it to heal. Isn't that so? There was no testimony about pain medication, no testimony about continuing effects or impacts on his day-to-day life. But I don't know what the standard treatment, Your Honor, is for a rib injury. Unless the court has any other questions on those two points, I would move on to my evidentiary point and to my attorney's point. At trial, the defendant attempted to offer the deposition testimony of Lieutenant Jerry Laramie, who was a watch commander at the time of the incident. About the fact that shanks were all over the place. And the court refused, saying it was cumulative. Now, it was cumulative in two ways. One, McGrath testified to that. And I might see that having somebody else testify to that might be useful and therefore— And Barnaby was believed by the jury. So why under the circumstances— You know, if Barnaby had not testified, this might be more interesting. But Barnaby said exactly the same thing that this deposition would have said. So why can we say that the court was beyond its discretion in doing that? Because the court was specifically beyond its discretion because it made the factual error of concluding that it was repetitive. That it was cumulative of prior evidence. You say it wasn't cumulative because the watch commander would have added the point that there was plexiglass missing at the time of the assault because an investigation was being conducted into what happened to it? Yes. Is that a thrust? That there was a specific ongoing investigation into a lost plexiglass at the facility. And what was the probative of that? What did that add to this case? If you think about—it's either the case that the corrections officer brought— either acquired the shank at some secure place within the facility or brought in the plexiglass shank from outside the facility. There's a fixed—his access is consistent at point A and point B. At time A and time B. Now, if there—and that's juxtaposed against the access that the prisoner has to the plexiglass. So if we have Lt. Laramie testifying to a specific ongoing investigation and specific missing plexiglass, that has a tendency— But he wasn't linking that investigation to the plaintiff. No, he was not linking it to the plaintiff, but it creates additional means— But does that really add to what Barnaby had already said? That these things were available and therefore the plaintiff could have had it. I mean, you know, I think the jury was told the plaintiff could have had it and chose not to believe your client and to believe the other one. And that's very unusual, but it happened. Lt. Laramie is a more—again, he would add imminence to the investigation, and that would have been evidence that would not have been known to McGrath and to Barnaby, which would give additional credibility to McGrath and Barnaby's testimony that not only were they generally available— There are weapons all over prisons of all sorts, and guards frequently have access to homemade weapons that they could have confiscated from another prisoner. And prisoners get access to all kinds of things that they make into weapons. In this prison, there was testimony by both McGrath and Barnaby that plexiglass was one of the things that was floating around in the prison. So, okay, we know that. It could have been something that the prisoner had, or it could have been something that McGrath had and planted. And it's logical if you're going to plant something that you plant something that's realistic. So does it still come down to does the jury believe one person's testimony or the other as to where this particular piece of plexiglass came from? I think that hits exactly on an argument, a point that we're trying to make. When Mr. McGrath testifies to the existence of plexiglass and when Mr. Barnaby, to a lesser extent, testifies to the existence of plexiglass at the facility, it is as much indicting of them—it's a double-edged sword. It's both creating the motive to frame as well as the access that the prisoner would have. If we were to have an objective third-party voice speak to the same facts and speak with specific imminence about additional facts that— But how would that change the different motive, the motive point that you just made? That it's still the case that this particular piece of plexiglass came from one person or the other person. And Laramie doesn't have anything to say about that. My argument is that the imminent release of that plexiglass made it more probative that it arose from Mr. Tranchina. And we think that if that point had been accepted by the jury, there would have been a— Yes, the jury could have certainly credited the testimony of Mr. McGrath on every point. This would have added credibility across the board and could have resulted in a reversed outcome on that point. And finally, we make—and if your honors may allow me just 15 seconds— we briefed out the issue of attorney's fees to Mr. Miller. Mr. Miller, unfortunately, was unable to attend the trial. But if you look at the—due to his parents' health obligations— if you look at the billing as we've laid it out in our brief, this case was already fully staffed and redundantly staffed by Mr. Simon and Mr. Weiss before the trial preparation of Mr. Miller began. There's no basis for the court's inference that the preparation of Mr. Roach was cumulative. Mr. Roach appears to have picked up the case independently and performed admirably at trial without relying on any work product that had been generated by Mr. Miller. Just looking at the billing slips. So we would just simply ask on the final point that the court would reverse the award at least to the extent of the $53,000 awarded to the plaintiff for Mr. Miller's fees. Thank you. Thank you, Your Honor. Good morning, Your Honors. Edward Sivan for Joseph Crancina. Counsel was asked, isn't it undisputed that the rib injuries were caused by the interaction with McGrath? And I believe he said, no, it's not undisputed. In fact, it is undisputed. If I can cite from the record, page A183 of the appendix, McGrath is asked on line 15, question, okay, and what's your explanation for how he sustained the fractured rib? Answer, we both went into the heating register that was behind us. Question, so did he hit, what part of his body hit off of the heating register? Answer, the same as mine, the right side, rib area, you would call it. So McGrath acknowledges that plaintiff suffered an injury to his rib. He just denies the mechanism by which it occurred. With respect to the plexiglass, plaintiff never denied a trial that plexiglass was all over the place, and the undisputed testimony from McGrath and Barnaby was that incarcerated individuals have ready access to plexiglass. And in fact, McGrath testified that this was something that was available at the very time. Bear with me just a moment. So on page A376, he was asked, line 21, were you aware of plexiglass shanks circulating at the Bear Hill Correctional Facility around the time of January 2016? Answer, yes. Question, how did you become aware of that? Answer, on a daily report, our pre-shift in the morning, any weapons or contraband had been found, so forth and so on. So I don't think that the other witness would have added anything to that particular issue. And finally, with respect to the attorney's fees, I think it's clear that Judge D'Agostino took a rather large scalpel to our attorney's fees. She cut my partner's fees by one-third. She reduced Mr. Roach's fees, my other partner, for the various trial prep by one-half. And she cut all of our travel time within the Northern District. So I think the end result was very fair. Thank you. Thank you. I've just done a final point on the issue of the cumulativeness of the evidence. The federal rules require that there be a weighing of the probative value against the, it must be, the probative value must be substantially outweighed by a danger of needlessly presenting cumulative evidence. This is not a context where there would be some sort of inflammatory or prejudicial inference to be drawn from cumulative evidence. This was a request to simply read in a few paragraphs of a deposition at the trial. You're saying that there would be no prejudice from admitting this? Right. Yeah. And especially the context, it was not a, it would have been very simple to just present a few paragraphs of testimony to the trial court. It would have not delayed the trial significantly. And that would just, unless the court has any other further questions, I would rest on my papers. Thank you. Thank you both, and we'll take the matter under advisement. That's the last case to be argued this morning, so I will ask the deputy to adjourn court. Court is adjourned.